You okay? Okay. Our next case is Carol Gorzyka, I hope I pronounced that one correctly too, versus MSC Cruises, case number 16-15491. Mr. Watson. Good morning, Your Honors. Counsel, the issue before the court is whether the record here creates a genuine fact issue about notice to the defendant cruise line of a tripping hazard on the stairs leading to the Pantheon Theater aboard the cruise ship Divina. Mr. Watson, before you continue, at some point during your remarks, I'd like you, if you could, to address our recent unpublished decision in Terrial versus MSC Crozier. I know that that's not a binding precedential decision, but it involved largely the same set of facts. At some point, I'd like you to address why you think that case was wrongly decided. I don't think it's wrongly decided, I think it's distinguishable. Okay. All right. Here, there's three different sources of a genuine issue of material fact here on the defendant's duty here, and they all appear in the deposition of the defendant's corporate representative, Ryan Allain. Okay? And Mr. Allain is a remarkable guy. He's a cruise line employee. He had 24 years in the Coast Guard as a ship safety inspector. So, what he knows and says about ships and safety and hazards should be given good credence here. So, I submit that if he believes that certain evidence is relevant to notice of a risk of tripping hazard, then that's sufficient to create a genuine issue of material fact for the jury. The first source of the genuine issue of fact is the 10 other similar fall-down accidents on the very same stairway during the three-year period before Ms. Gorzyka's fall. I believe they're similar as falls on the stairway, or do you define it in a different way? I'm going to define it the way that Mr. Allain chooses to define it, because he was asked Let me get his deposition part out. He was given a notice of the deposition as the corporate representative, and he was told what subject he was going to be speaking on under 30b-6 and given a list of documents. And counsel at his deposition on page 21 said, Provision 1 of my notice, I ask for any and all issues regarding similar accidents in the subject theater for three years prior to the present time of people falling down and getting injured on the plaintiff's steps. So, the question was asked in the context that Mr. Allain must have understood of similar. Tell me about similar. That's the category in the Rule 30b-6 notice, correct? Yes. So, to the extent that he was put up as the representative on that category, his testimony could be, well, I'm the only person who knows about that, and I don't know of any other tripping incidents. But I am the proper person to be designated on that issue. And he provided answers with regard to that issue, with regard to that section. I'm sorry, what did he specifically say about the cause of these prior incidents? Yes, I'll get there. You know, he asked for first clarification of the question. On that particular step, and the question was clarified, in the theater of the vessel. All right? And then, question yes, in the theater in general, people tripping and falling on the steps. All right? He says, in general, the theater, yes, we made an attempt. And he says, the question there on page 22, how many accident reports were there at least? Answer, I think there were less than 10, and of that specific step, I think there was only one. And then down at the bottom, asked, well, between 5 and 10, and he says somewhere in that range. Now, he is the witness who has been designated by the defendant to decide what is and what is not a similar accident or incident within the definition, within the meaning of the 30B6 notice. But on page 22 of the deposition, he is asked specifically, was it in a similar manner that my client fell where she tripped after her foot got stuck on that nose of the stair? And he says, no, I do not believe so. That goes to the third, that goes to my third, that goes to the specific, the one on the exact step. And if the court will permit me, I will get to that in due course. But... I want you to go back to Judge Duffy's question about, does he testify about what the cause of the trip or slip was in these other accidents? All right. I will go to that first. And here the cause is tripping, not slipping. I was saving this third thing for last because Mr. Allain testifies that the prior accident on this exact step was a tripping accident, not a slipping accident. Defendant in the brief is all saying, well, that prior accident, that must have been the one from the Tarriol case, however you say it, which was a slipping, not a tripping. I don't know if the record reveals whether the one prior accident on that exact step was the Tarriol, or however you say it, case, or if it was a different one, but it doesn't matter because while the district court's opinion in the Tarriol case, and this court picked it up in its opinion, talks about slipping being a slipping thing. Neither of those opinions can establish factually that the prior accident that we're talking about in our case was a slipping accident, and the only testimony about what that prior accident was, was that it was a tripping just like our case, and that begins after the part about . . . But Mr. Wasson, I think what we're all trying to figure out is how similar, and people can . . . Let's assume that, as you say, that they are both tripping incidents or accidents. People can trip for a variety of reasons. For example, the carpeting on the very top landing can be loose, or the metal strip here can be problematic as you've alleged, or the slope can be incorrect on the stairs themselves. There are various reasons why people might be able to trip in a theater like this one, and we're trying to figure out if you can help us do that, how similar was this one other tripping incident, or if there were more, we'd like to know that too. I think it was the only one on the exact same step, but here's how . . . But why did that person trip, that other person? Here's why we have to find that at least there's an issue of fact for the jury that it was that similar, because when Mr. Allain is asked to explain why he thinks it is a different type, that it's not a similar matter, he said, question, was it in a similar manner that my client fell when she tripped after her foot got stuck on that nose of the step? Answer, no, I do not believe so. Question, do you know how it happened? And then his explanation as to the difference is, I believe they were proceeding out of the theater. Question, you mean going up the steps? Answer, yes. And so his distinguishing of the two mechanisms of the fall was not the slope, it was not the carpet was loose, it was not anything, it was . . . one was going up and one was going down the stairs, and they both caught . . . so we have to assume that they both caught their foot on the same loose nose or metal strip on the edge of the stair, because his only explanation for the difference is that one was going up and one was going down. And then on the top of page 23, question, after he said that was one going up the steps, question, and they tripped? Answer, yes. Let me ask you what my concern is with respect to notice. I thought the claim here was that the nosing was actually loose on the step where the plaintiff tripped, is that correct? That the nosing was actually loose on the step where the plaintiff tripped? I don't understand, you used it was . . . That it was loose? Loose, loose, loose. Isn't that the claim here? That's the claim here, right, that the nosing was loose? Exactly. Okay, was there any evidence that it was loose on any other steps? I don't recall now, and I'll look quickly if I can during counsel's argument. But as I understand . . . I didn't think that was the issue here on this appeal. The issue on this appeal was just lack of notice of prior similar accidents on this step. And so there was notice of ten more. They were categorized as similar by Mr. Allain, and this one was the only difference was going up instead of going down. I need to move quickly to my third point, and that is it's not a prior accident, but there was a third thing that Mr. Allain testified to that would put someone on notice of this particular tripping hazard. He was asked . . . And this is where we get into the Terriell about the watch your step sign. Because in that case, this court said that the sign was not evidence that the defendant knew that the step nosing was going to be dangerously slippery. But in this case, there is evidence that the watch your step sign was notice that the nosing was going to be dangerously loose and tripping. And here's why. Because he was . . . Mr. Allain was asked if he took the position that the plaintiff was negligent at page 28 of his deposition. And he said yes. And he said . . . first he said because the condition was open and obvious. And then he said . . . also based on the fact that the stairs were in open and obvious condition, that they were marked with a sticker that said watch your step. And they were lighted. So Mr. Allain took the position that the watch your step sign put the plaintiff on notice that the nose rail was loose and she was going to trip on it. And so if it was sufficient to put her on notice of the danger under his testimony, then it should be sufficient to put the cruise line on notice of it as well. And so that distinguishes it from the Terrial case. I see I'm into my rebuttal time. So unless there are any further questions, I will look at that issue of the other nose rails during the break. Okay. Thank you, Mr. Wasson. You can leave him four minutes for rebuttal. Stephanie, thank you. Mr. Holman. It pleases the court, Steve Holman on behalf of MSC. I just want to reiterate here that counsel has indicated this is a tripping hazard, not a slipping hazard. And that Terrial is distinguishable because that was going to be a large part of my argument is that Terrial does not apply. Now he mentioned that there, Mr. Ryan indicated there were 10 other incidents in the theater. At no point during that deposition was Mr. Allain ever asked factual questions about any of those 10 other incidents. He was prepared to testify about those other incidents, but he was never asked questions about them. He would have testified that they were not similar, but they never asked him about those. And also there was reference to falling on the step. Well, Ryan Allain on page 47 of his deposition transcript testified that that occurred after. So yes, he was asked specific questions about, well, what were the specific facts involved in that other incident? And that's what Ryan was testifying to. But then on page 47, Ryan made it clear that that incident happened after, after the Gorsica incident. Now they keep going back to these 10. When in comparison did he say? He did testify and I do not know off the top of my head when that was, but it was not on that night and it wasn't on that cruise and it wasn't a cruise that was around the same time. You know, the plaintiff's burden to come forward with evidence and they haven't come forward with evidence to establish actual or constructive knowledge. MSC made a prima facie case that there were no prior similar incidents. At that point the burden shifts to the plaintiff to present evidence of a prior similar incident giving notice. Plaintiff failed to do that. You know, the district court held a hearing, very lengthy hearing, oral argument on all of these issues. It lasted well in excess of an hour, probably an hour and 20 minutes, an hour and a half. All of these facts, all of these, all of the evidence was in front of the district court. The district court decided after the hearing and told everyone, I'm not going to rule today. I want to thoroughly read all of the pleadings. I want to examine all of the evidence and I want to read all of the case citations that you, that the party cited in their pleadings and then I'll make my ruling. Two months later, the court issued her ruling granting summary judgment. All of these issues were addressed there. You know, in short, it was their responsibility to come forward with evidence showing prior similar incidents. They haven't. Basically, what we have here is de facto arguments. Well, there's nosing on all the steps, therefore, you know, they're similar. They cited a whole lot of trips, or falls rather, in various parts of the ship, not involving steps, just basic people fell in other parts of the ship. And they're saying, well, because these folks fell in the buffet or they fell in the restaurant or they fell by the pool, you have noticed that people fall in on cruise ships, therefore, you had constructive notice that Ms. Gorsica could fall in the theater. And that's basically what they're saying. It's all ipso facto argument. Well, in fairness, I think what Mr. Allain testified to were falls on the stairs in the theater. He said that there had been, he was aware that there had been 10 people who fell in the theater. Some of them could have been, he didn't testify whether they were on the stairs, whether they were on the flat parts of the theater, whether they were down by the stage, because he wasn't asked those questions. He was a good corporate representative. Yes, yes, sir. He said only what was asked of him and volunteered nothing extra. I don't mean that as a bad thing. No, he answered the question. It's just an observation. He was never asked about the facts of any of those, nor was he asked about the facts of the Terriel matter, which he knew about. We were defense counsel in that. I'm infinitely familiar with that case, as was Ryan Allain. He was never asked about any of those. He could have testified to them, but he was not asked. Is there anything in the record of however many falls there were, let's just say 10, any other fall before this one, based upon the nosing on a step? No, there was not. There has not been. Prior to this, the accident reports were reviewed and analyzed, and there were no prior reported incidents involving a loose nosing. None. Can you talk to me a little bit about this issue concerning the creation of a dangerous condition? The district court thought that because the ship was built and designed by a different entity, that MSC had no duty to retrofit the staircase or fix it in any way, but there's no citation provided for that proposition of law. Can you tell me where that notion comes from? Yes, there are cases, including out of the 11th Circuit that we've cited in our brief. It's the design defect cases, where if we took possession of the ship, and this is the condition of the ship when we took possession of it, and then somebody claims that that design caused them to fall. In this instance, if they had alleged that it was the design of the step itself had caused Ms. Gorsica to fall, the cases hold, including the 11th Circuit, we didn't design it. We didn't build it. We took it that way from the shipbuilder. Now, after we've become aware that maybe there is a design defect, maybe we would do remedial improvements on it, but we can't be held responsible for remedial measures. You want us to improve things that we know are causing a problem, but that wasn't what was alleged here. So now you've got to fix the... I'm sorry? So now you've got to fix the problem, right? This is the only time anybody has ever complained. You've got two incidents now, so now you're on notice, right? And we did fix the loose nosing. Ms. Gorsica alleged she fell because the nosing was loose, and because it was loose, she tripped. The person who was walking out of the theater later after did not complain of a loose nosing. They just said they tripped. They didn't say that they tripped because of the nosing, and they didn't say that they tripped actually for any reason. But we did, Ryan did give them that information, that yes, somebody else has tripped on that step. But there was no allegation that the nosing was loose, and they didn't claim that they tripped because of the nosing itself. They just said they tripped. And I believe, and this is my memory, is that they said they didn't see the... Because that particular step, there's a run-up, there's a ramp, and then the steps begin. So this was the first step. And if I recall correctly, she... First step from the bottom or from the top? From the bottom. There's a ramp, there's the stage, then there's a ramp that goes up, and then the stairs begin. And this particular guest was walking up the ramp and said that she didn't see the step and she tripped. But there's no indication, to your question, there is no indication in any of these reports prior to this incident that anybody reported tripping because the nosing on the step was loose. And that's what they're alleging occurred here. The question I asked was, is there any evidence in the record that anybody tripped blaming it on the nosing, whether it was loose or whether they couldn't see it or whether it protruded out a little bit? Is there any evidence in the record that any trip call resulted from the nosing, whether it's loose or not? No, not from the nosing. The only one up until prior to that was the terriel matter that the 11th Circuit ruled on. And in that case, it was a slip and fall. In that particular instance, the claim was that on some of the nosings there is a warning sign or a warning sticker that says, watch your step. And Ms. Terriel claimed that when she went to walk on the nosing, the heel of her shoe hit the warning sticker. It was slippery and caused her to fall. She didn't claim that the nosing itself caused her to fall. She claimed that she slipped on that warning sticker that says, watch your step. And that was pointed out, incidentally, in the 11th Circuit's ruling. I believe maybe the last page, the next to the last page in the court, took exception and said because she was arguing that it was notice, like here, that it's notice. The mere fact you had those warning stickers there means you had notice there was an issue. And the court said and even used the word common sense. No, common sense says that they're warning you that there's a step there. You're being warned that there is a step there. I thought the argument in Terriel about the sticker was what you just said and not that she slipped on the sticker. No, that's what the 11th Circuit ruled. She said she slipped on the sticker. The sticker caused the anti-slip nosing to become slippery because it was on top of the nosing. So when her heel hit that sticker, it slipped. Where can I find that? Is that in the lower court opinion? That should be in the 11th Circuit ruling in Terriel. It said she slipped on the metal strip, but it doesn't say that she slipped on it because of the warning sign or that the warning sign was itself slippery. It says the step was brightly illuminated by a strip of lights running along its edge. While leaving the theater after the show, Terriel slipped on the metal strip as she stepped down from the step, causing her to fall and break her right ankle. And what are you reading from? The Terriel 11th Circuit opinion. Okay, well, I'm reading from page 7. On page 1. So, I mean, I have the federal appendix version. Okay. Tell me what paragraph, what the paragraph begins with and we can both find it together. Okay. Page 1. Well, page 1 on the federal appendix printout. It could be a different pagination if you have the original 11th Circuit opinion. But tell me what... Okay, are you in section 2 of the opinion or section 1 of the opinion? Section 1. Okay, tell me where you... Okay, I see what you're saying. While leaving the theater after the show, I see what you're referring to. Right. So Judge Pryor's question is where do you think we can find that she slipped on the warning sign itself as opposed to the metal strip? You would have to go back and look at the pleadings, the brief in that case that went up on appeal. And that's what I'm alluding to on page 7 where at the very first full paragraph you say, second, the watch your step sticker does not raise an issue of fact of whether the defendants had notice of the nosing's slippery condition. Right, and we understand that, but there's a difference between... On appeal was that she slipped on the sticker. That they conceded that the nosing strip was anti-slip. But they then argued that the sticker itself made the nosing slippery. And when her shoe or heel hit that watch your step, that it became slippery and she lost, you know, her shoe slipped on it. Okay. That was the argument in their pleading. That may be. We have the briefs to look at, but that paragraph doesn't explain where the sticker originates from. But I understand. What was the timing between the incident in this case and the timing of the incident in the Terriell case? You said before in response to my question that that was not in the record, right? That he didn't testify about the span in time between Miss Gorsica's accident and the other incident of tripping on the steps. I don't recall the exact date of Terriell, no. Okay. Not Terriell. You're asking about the other one in this case, right? Yes. No, Judge Duffy is asking you about the second incident that your corporate representative testified about, which he later clarified was after Miss Gorsica's incident. Yeah, I do not remember. I do not know what date that was, but I do know that it was after, and that's why Ryan made it clear during his deposition testimony, that it was after. Okay. We got it. That's all. Thank you for your time, and if you have no more questions, thank you. Okay, Mr. Holman, thank you very much. Mr. Wasson, he says that that other tripping incident was afterwards. Is that correct? Well, there's evidence in the record from which the jury could find that it was before, and that comes from Mr. Lane's deposition when he was asked if he had gathered the information on Provision 1. I asked for any and all issues regarding similar accidents in the subject theater for three years prior, prior to. So not after, but prior. And then he clarifies, is it people in the theater? And, you know, the argument was made that, well, this was just maybe trips and fall or slips and falls, falls down anywhere around on the theater, but the question was specific. The question, getting injured on the plaintiff's steps, and then he clarified it. In the theater of the vessel? Yes, in the theater of the vessel. You know, the substantial similarity is required under this court's decision, but I'm glad to see Judge Pryor and Judge Jordan on this panel because you're the ones who held in that Sorrell's case that there has to be some loosening of the joints or something about the substantial similarity. You can't just require the exact similarity in the prior accidents, but here we've got enough. He says that the only difference in this one of the somebody else, this one on the particular step, which there's evidence happened before, was the only difference was going up the steps instead of going down. So we say it was going down the steps because of a loose nose rail. He says it's different because it's going up the steps, but he doesn't say because it was anything else. So that's evidence to defeat summary judgment. And the warning sign in this court's Terriall decision, there the warning sign was not notice of the particular risk, but here because Mr. Allain says that this warning sign should have put my client on notice of that particular defect and she was negligent by not adhering to it, well, likewise, it put the cruise line on notice of the same thing. I had one more point. I'm going to try to remember what it was because I'll kick myself if I don't. Oh, and that is on the alleged differences in the Terriall case and this case. I don't know. I suspected when I read this that the Terriall case and the one involving the trip on the same step going up the steps might be the same one. For one thing, how that accident happened in the Terriall case has not been established by evidence in our case, and I object to the court making a factual finding that it was found in a different way because of what was said in a prior opinion in a case that my client didn't have the opportunity to examine the witnesses and so forth. We can't – You're absolutely right about that, and we can't juxtapose factual findings made in a prior case to a later case that you weren't a part of. My question, though, was about the legal reasoning in the opinion, for example, the part about the warning sticker. And if the Eleventh Circuit said earlier that the placing of a warning sticker isn't evidence of notice or constructive notice because all it means to tell you is, hey, watch out, there's a step coming, why isn't that rationale applicable here as to one of your arguments? I assume in that case there was no testimony like there is here that that warning sticker is notice of this defect, and if a plaintiff had adhered to the warning sticker, she would not have fallen down. So if it's notice to her, it's notice to the cruise line, and that should be sufficient evidence to distinguish the case. All right, thank you very much, Mr. Watson. Thank you both.